UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CORE PROPERTY CAPITAL, LLC,
CHAD LUND, THOMAS LUND, and
JOHN GRAHAM,

      Plaintiffs,

v.                              Case No: 2:15-cv-209-FtM-29MRM

PROFOR SECURITIES, LLC and
VITO MILANO,

      Defendants.

_____

## OPINION AND ORDER

This matter comes before the Court on Plaintiffs' Motion for Preliminary Injunction (Doc. #2) filed on April 1, 2015. Defendants filed a Response (Doc. #14) on June 30, 2015.  Also before the Court is Defendants' Motion to Dismiss (Doc. #13) filed on June 30, 2015.  Plaintiffs filed a Response (Doc. #21) on July 17, 2015.  For the reasons set forth below, Plaintiffs' Motion for a Preliminary Injunction is denied and Defendants' Motion to Dismiss is granted in part and denied in part.

**I.**

Plaintiffs Core Property Capital, LLC (CPC), Chad Lund, Thomas Lund, and John Graham have filed a Complaint (Doc. #1) against Defendants Profor Securities, LLC (Profor) and Vito Milano (Milano) seeking declaratory and injunctive relief barring Defendants from pursuing an arbitration against Plaintiffs.  The basic underlying facts are as follows:

CPC is a Florida limited liability company.  Plaintiffs Chad Lund, Thomas Lund, and John Graham (the Individual Plaintiffs) are the sole members of CPC.  CPC controls an entity known as Core Fund Management, LLC (Core Fund).  In 2012, Core Fund entered into a Placement Agent Agreement (the Placement Agreement) with McFarland Dewey Securities Co., LLC (MCFD).  (Doc. #1-1.)  The Placement Agreement provides that "[a]ny disputes between the parties relating to the terms of this Agreement, or the breach thereof, shall be submitted to binding arbitration in New York, New York, in accordance with the rules of the American Arbitration Association." (Id. at p. 10.)  Chad Lund executed the Placement Agreement on behalf of Core Fund in his capacity as Core Fund's President.  (Id.)  In 2013, the Placement Agreement was amended to, inter alia, assign MCFD's rights to Profor.  (Doc. #1-2.)  The amendment did not alter the portion of the Placement Agreement providing for binding arbitration.  (Id.)

Profor contends that Core Fund breached the Placement Agreement by failing to pay Profor more than $1 million in fees. (Doc. #18-1.)  Milano, who worked for Profor, contends that Core Fund also breached an oral agreement to pay him a $200,000 finder's fee for locating a buyer for one of Core Fund's real estate investments.  (Id.)  In February 2015, Profor and Milano commenced an arbitration (the Arbitration) with the American Arbitration Association (the AAA), citing the arbitration clause in the Placement Agreement.  (Id.)  In the Arbitration, Profor and Milano

- 2 -

bring causes of action for breach of contract against Core Fund and unjust enrichment against the Individual Plaintiffs. (Id.) Although not specifically addressed in any of Profor and Milano's causes of action, CPC is also named as a respondent in the Arbitration because, as alleged by Profor and Milano, CPC is a holding company which controls Core Fund. (Id.)

According to Plaintiffs, the Placement Agreement is between Core Fund and Profor only.   Therefore, Plaintiffs argue that because they are not parties to the Placement Agreement, they are under no obligation to arbitrate Profor and Milano's claims against them.   Plaintiffs seek injunctive relief barring the Arbitration from proceeding as to them, and now move for a preliminary injunction to that effect.   Plaintiffs also seek a declaratory judgment that Defendants have no enforceable agreement to AAA arbitration of their claims against Plaintiffs.

Profor and Milano oppose an injunction and seek to dismiss the Complaint in its entirety, arguing (1) that only the _arbitrator_ may determine the arbitrability of their claims against Plaintiffs; and (2) that even if the issue of arbitrability is for the Court to decide, the Plaintiffs are bound by the Placement Agreement's arbitration clause.

## II.

"The purpose of the preliminary injunction is to preserve the positions of the parties as best we can until a trial on the merits may be held."   Bloedorn v. Grube, 631 F.3d 1218, 1229 (11th Cir.

- 3 -

2011).   In order to obtain a preliminary injunction, the movant must demonstrate "(1) a substantial likelihood of success on the merits of the underlying case, (2) the movant will suffer irreparable harm in the absence of an injunction, (3) the harm suffered by the movant in the absence of an injunction would exceed the harm suffered by the opposing party if the injunction is issued, and (4) an injunction would not disserve the public interest." Odebrecht Constr. v. Sec'y, Fla. DOT, 715 F.3d 1268, 1273-74 (11th Cir. 2013).   "[A] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes 'the burden of persuasion' as to each of the four prerequisites." Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000) (quoting All Care Nursing Serv., Inc. v. Bethesda Mem. Hosp., Inc., 887 F.2d 1535, 1537 (11th Cir. 1989)).

## A.   A Substantial Likelihood of Success on the Merits

Plaintiffs seek an injunction barring the Arbitration from proceeding against them.   "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." United Steelworkers of Am. v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582 (1960).   "Whether an arbitration agreement exists is settled by state-law principles of contract law." Hanover Ins. Co. v. Atlantis Drywall & Framing LLC, No. 13-14482, 2015 WL 3372199, at *3 (11th Cir. May 26, 2015). "Under Florida law, a court may not compel arbitration in the absence of express language in the parties' contract mandating

arbitration of such disputes." _Peters v. Keyes Co._, 402 F. App'x 448, 450 (11th Cir. 2010) (quoting _Seifert v. U.S. Home Corp._, 750 So. 2d 633, 642 (Fla. 1999)).

Here, there is no question that an agreement exists and that it requires arbitration.  The Placement Agreement provides that "[a]ny disputes between the parties relating to the terms of this Agreement, or the breach thereof, shall be submitted to binding arbitration in New York, New York, in accordance with the rules of the American Arbitration Association."  (Doc. #1-1, p. 10.) Plaintiffs argue, however, that they are not bound by the Placement Agreement because they are not "parties" to it.  Thus, for the purposes of Plaintiffs' preliminary injunction motion, the issue is whether Plaintiffs have demonstrated that they are substantially likely to prove that they are not parties to the Placement Agreement and therefore cannot be compelled to arbitrate.  Defendants respond that the Court does not have the authority to make such a determination and, alternatively, that Plaintiffs are bound by the Placement Agreement even though they did not sign it.  The Court will address each argument in turn.

### 1. __Whether the Court or the Arbitrator Determines Whether Plaintiffs are Parties to the Placement Agreement__

As previously noted, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." _United Steelworkers_, 363 U.S. at 582.  The question here is whether the Court or an arbitrator gets to determine whether the Plaintiffs have agreed to

- 5 -

arbitrate Defendants' causes of action against them.  Generally, so-called "gateway" issues such as "whether the parties have a valid arbitration agreement at all" are questions for the Court, not the arbitrator, to decide.  Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444, 452 (2003).

The parties, however, are free to draft around this default rule and to vest an arbitrator with the power to determine the arbitrability of a dispute.  This is commonly done, as the parties to the Placement Agreement did here, by specifying that the arbitration is to take place in accordance with AAA rules.  The AAA rules provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." Am. Arbitration Ass'n, Commercial Arbitration Rules, R. 7(a). Thus, an arbitration clause incorporating the AAA rules "clearly and unmistakably allow[s] the arbitrator to determine her own jurisdiction when . . . there exists a prima facie agreement to arbitrate . . . ." Terminix Int'l Co. LP v. Palmer Ranch Ltd. P'ship, 432 F.3d 1327, 1332 (11th Cir. 2005) (quoting Apollo Computer v. Berg, 886 F.2d 469, 473 (1st Cir. 1989)).  Therefore, when the parties to the Placement Agreement incorporated the AAA rules into their arbitration clause, "they clearly and unmistakably contracted to submit questions of arbitrability to an

arbitrator." U.S. Nutraceuticals, LLC v. Cyanotech Corp., 769 F.3d 1308, 1311 (11th Cir. 2014).

In this case, Plaintiffs are only entitled to an injunction if the establish that they are not parties to the Placement Agreement.  According to Defendants, the Court's analysis should end there, as Terminix and U.S. Nutraceuticals hold that questions of arbitrability are left to the arbitrator where the parties have contracted for AAA arbitration.  However, as the Eleventh Circuit explained in Terminix, this rule applies only where "there exists a prima facie agreement to arbitrate . . . ."  432 F.3d at 1332 (quoting Apollo Computer, 886 F.2d at 473 (1st Cir. 1989).  Here, there is not a prima facie agreement to arbitrate between Plaintiffs and Defendants because Plaintiffs are not parties to the Placement Agreement.  The Placement Agreement specifically identifies MCFD and Core Fund as its only parties.  (Doc. #1-1, p. 2.)  Although Individual Plaintiff Chad Lund did sign the Placement Agreement, he indisputably did so solely in his capacity as President of Core Fund.  (Id. at p. 12.)  Likewise, the amendment through which the Placement Agreement was assigned to Profor states that it is made between Core Fund and Profor with Milano as "Key-Man," and is executed by Core Fund, Profor, and Milano only. (Doc. #1-2, p. 2.)

Thus, we are left with a situation where "a party has not signed an agreement containing arbitration language, [and] such a party may not have agreed to submit grievances to arbitration at

all." Chastain v. Robinson-Humphrey Co., 957 F.2d 851, 854 (11th Cir. 1992). In such cases, "before sending any such grievances to arbitration, *the district court itself* must first decide whether or not the non-signing party can nonetheless be bound by the contractual language." Id. Thus, the Court is tasked with determining whether Plaintiffs are bound by the Placement Agreement. Defendants' motion to dismiss on this basis is denied.

## 2.   Whether Plaintiffs are Bound by the Placement Agreement

Although Plaintiffs are not parties to the Placement Agreement, they nevertheless may be bound by its terms because "common law principles of contract and agency law allow a signatory . . . to bind a non-signatory . . . to an arbitration agreement under any of five distinct theories: (1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter-ego; and (5) estoppel." World Rentals & Sales, LLC v. Volvo Const. Equip. Rents, Inc., 517 F.3d 1240, 1244 (11th Cir. 2008) (quotation omitted).

Here, Defendants rely on the theory of estoppel, which provides that "a nonsignatory to an arbitration agreement may be bound to arbitrate if the nonsignatory has received something more than an incidental or consequential benefit of the contract." Kong v. Allied Prof'l Ins. Co., 750 F.3d 1295, 1302 (11th Cir. 2014) (quotation omitted). The prototypical estoppel cases are those where a non-signatory is a third-party beneficiary of the contract in question or where a non-signatory has been assigned

- 8 -

rights under the contract and is seeking to enforce those rights. See, e.g., Kong v. Allied Prof'l Ins. Co., 750 F.3d 1295, 1302 (11th Cir. 2014) (non-signatory patient required to arbitrate claim against insurance company where patient was assigned rights under an insurance policy containing an arbitration clause); Cone Constructors, Inc. v. Drummond Community Bank, 754 So. 2d 779 (Fla. 1st DCA 2000) (non-signatory bank who was assigned debts from signatory was required to arbitrate where security agreements and promissory notes between debtors and signatory contained arbitration clauses).

In support of their argument that Plaintiffs are estopped from disclaiming the Placement Agreement's arbitration clause, Defendants argue that the Placement Agreement provided Plaintiffs with direct economic benefits. Specifically, Defendants allege that, pursuant to the Placement Agreement, Milano raised substantial capital for Core Fund. Defendants argue that this capital influx directly benefited CPC because it controlled Core Fund and, in turn, directly benefited the Individual Plaintiffs because they are the sole members of CPC. Similarly, Defendants argue that Core Fund's refusal to pay Profor and Milano the amounts they are owed benefited Plaintiffs because the money retained by Core Fund as a result of non-payment ultimately flows to its owners: CPC and the Individual Plaintiffs.

However, Defendants do not cite, and the Court is unaware of, any case in which a non-signatory was bound to arbitrate solely

because it had an ownership interest in a signatory. To the
contrary, Florida courts have held that non-signatories are not
bound by arbitration clauses simply because the contract in
question generates income that ultimately flows to the non-
signatory. See Morgan Stanley DW Inc. v. Halliday, 873 So. 2d
400, 403 (Fla. 4th DCA 2004) (non-signatory trust beneficiary not
bound by arbitration clause even though the contract concerned
assets generating income that ultimately flowed to non-signatory).
Likewise, the Eleventh Circuit has explained that "the distinction
between signatories and non-signatories is important to ensure
that short of piercing the corporate veil, a court does not ignore
the corporate form of a non-signatory based solely on the
interrelatedness of the claims alleged." World Rentals & Sales,
LLC v. Volvo Constr. Equip. Rents, Inc., 517 F.3d 1240, 1248-49
(11th Cir. 2008) (quotation omitted).

Here, Defendants do not provide allegations sufficient to
pierce Core Fund's corporate veil. Accordingly, the Court
concludes that Defendants have failed to identify any legal theory
under which Plaintiffs would be bound by the Placement Agreement's
arbitration clause. Thus, Plaintiffs have demonstrated that they
are substantially likely to prove that they are not parties to the
Placement Agreement or otherwise bound by its terms.

**B.   Irreparable Injury**

"A showing of irreparable injury is the *sine qua non* of
injunctive relief." Siegel, 234 F.3d at 1176 (citation omitted).

"[E]ven if Plaintiffs establish a likelihood of success on the merits, the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper.  Id.

Here, Plaintiffs allege that they will suffer irreparable harm if the Arbitration is allowed to proceed against them absent their consent.  However, as explained by the Eleventh Circuit, such harm does not warrant an injunction:

> Even if the defendants were permitted to proceed with arbitrating nonarbitrable claims, it is unclear how the plaintiffs would suffer any injury at all, much less irreparable injury. The plaintiffs would not have to participate in the defendants' arbitration proceedings. Even if the defendants obtained a default verdict against them, they would be unable to have it enforced in a district court because a district court is empowered to vacate arbitral awards where the "arbitrators exceeded their powers." 9 U.S.C. § 10(a)(4). If a dispute is nonarbitrable, then an arbitrator necessarily exceeds his powers in adjudicating it. Consequently, while the defendant is free to initiate whatever private arbitration proceedings he wishes, a plaintiff need not be troubled by them because they are essentially legal nullities from the start.
>
> Even if a plaintiff does decide to raise the justiciability issue before the arbitration panel, the time and expense he incurs in doing so simply does not constitute irreparable injury. "Mere injuries, however substantial, in terms on money, time and energy necessarily expended in the absence of a stay, are not enough." Sampson v. Murray, 415 U.S. 61, 90, 94 S. Ct. 937, 953, 39 L.Ed.2d 166 (1974) (quotation marks and citation omitted).

Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1112 n.20 (11th Cir. 2004).

Under Klay, Plaintiffs cannot establish that the continuation of the Arbitration will cause them irreparable harm.  A showing of irreparable harm is a necessity for both preliminary and permanent injunctions.  Winter v. NRDC, 555 U.S. 7, 32, (2008) ("The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success.") (quoting Amoco Prod. Co. v. Gambell, 480 U.S. 531, 546 n.12 (1987)).  Therefore, even taking all allegations in the Complaint as true, Plaintiffs have failed to state a claim upon which the Court may grant their requested injunctive relieve.  See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.").  Accordingly, Plaintiffs' cause of action for injunctive relief must be dismissed.  The case will proceed as to Plaintiffs' cause of action for a declaratory judgment that Defendants have no enforceable agreement to AAA arbitration of their claims against Plaintiffs.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1.   Plaintiffs' Motion for Preliminary Injunction (Doc. #2) is **DENIED.**

2.   Defendants' Motion to Dismiss (Doc. #13) is **GRANTED IN PART and DENIED IN PART.**   Plaintiffs' cause of action for injunctive relief is **DISMISSED.**   The motion is otherwise **DENIED.**

**DONE and ORDERED** at Fort Myers, Florida, this ___30th___ day of July, 2015.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE


Copies:
Counsel of Record